UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Edwin and Louise Hunt</u>,
     Plaintiffs

     v.                          Case No. 18-cv-343-SM
                                   Opinion No. 2019 DNH 105
<u>Target Corporation</u>,
     Defendant

# O R D E R

Edwin and Louise Hunt bring two common law claims against Target Corporation, seeking compensation for injuries sustained as a result of Target's alleged negligence. Specifically, they claim that Target negligently maintained property adjacent to one of its stores by failing to properly remove accumulated ice and snow. While Mr. Hunt was making a delivery to that store, he stepped out of his truck, slipped on that accumulated ice, and severely injured his back, right hip, and knee. Louise Hunt seeks compensation for loss of consortium.

Target moves for summary judgment, advancing two arguments. First, it says the property on which Mr. Hunt was injured is Limited Common Area of the Monadnock Condominium and, therefore, not part of Target's condominium unit. In simple terms, Target says it is not the owner of the property on which Mr. Hunt was

injured and, therefore, owed no duty of care to him. Next, says Target, even if it did owe some duty to Mr. Hunt to ensure the area was clear of snow and ice, there is no evidence to support plaintiffs' claim that Target breached that duty. So, Target argues, it is entitled to judgment as a matter of law on both of plaintiffs' claims. Plaintiffs object.

For the reasons discussed, Target's motion for summary judgment is granted

## Standard of Review

When ruling on a motion for summary judgment, the court is "obliged to review the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." <u>Block Island Fishing, Inc. v. Rogers</u>, 844 F.3d 358, 360 (1st Cir. 2016) (citation omitted). Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this context, a factual dispute "is 'genuine' if the evidence of record permits a rational factfinder to resolve it in favor of either party, and 'material' if its existence or nonexistence has the potential to change the outcome of the suit." <u>Rando v. Leonard</u>, 826 F.3d 553, 556 (1st Cir. 2016) (citation omitted).

Consequently, "[a]s to issues on which the party opposing summary judgment would bear the burden of proof at trial, that party may not simply rely on the absence of evidence but, rather, must point to definite and competent evidence showing the existence of a genuine issue of material fact." Perez v. Lorraine Enters., 769 F.3d 23, 29–30 (1st Cir. 2014). In other words, "a laundry list of possibilities and hypotheticals" and "[s]peculation about mere possibilities, without more, is not enough to stave off summary judgment." Tobin v. Fed. Express Corp., 775 F.3d 448, 451–52 (1st Cir. 2014). See generally Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).


## Background

Target is the owner of Unit 5 in the Monadnock Condominium, on which it constructed one of its stores. That store is located in a shopping center known as Monadnock Marketplace, in Keene, New Hampshire. According to plaintiffs' complaint,

> On February 22, 2015, Mr. Hunt was making a delivery
> to the Target store in Keene, New Hampshire. He was
> walking around his work truck to drop and hook a
> Target trailer of merchandise when he slipped and fell
> on ice that had accumulated in the docking area
> resulting in severe injuries to his back, right hip,
> and knee.

Complaint (document no. 1-1) at para. 5. At his deposition, Mr. Hunt testified that, on the date of his accident, he arrived at

the Target store around midnight.  Deposition of Edwin Hunt

(document no. 13-8) 50.  He backed up his truck to the elevated

loading dock at the rear of Target's store, "got out of the

truck, and walked around the front."  Id. at 66.  He then

slipped and fell on some ice "around the front of [the]

tractor."  Id.

The property on which Mr. Hunt fell is a concrete pad on

which delivery trucks park, see id. at 80, immediately adjacent

to Target's elevated loading dock.  The preliminary (and

potentially dispositive) question presented by Target's motion

for summary judgment is this: who owns that concrete pad on

which Mr. Hunt was injured?  Plaintiffs assert that Target owns

that property or, at a minimum, is obligated by the relevant

condominium documents to maintain that property in a safe

condition.  Target, on the other hand, asserts that the area

where Mr. Hunt was injured is Limited Common Area, which is

owned in common by all unit owners, and is maintained by the

Monadnock Condominium Unit Owners' Association.

## Discussion

I.  New Hampshire's Condominium Act.

Under New Hampshire's Condominium Act, N.H. Rev. Stat. Ann.

("RSA") chapter 356-B, all unit owners in a condominium share an

undivided ownership interest in the "common areas." RSA 356-B:3. "Common areas" are defined as "all portions of the condominium other than the units." Id. "Limited Common Area" is a subset of the Common Area which, although owned in common by all unit owners, is "reserved for the exclusive use of those entitled to the use of one or more, but less than all, of the units." Id. The Condominium Act allocates maintenance and repair responsibilities for units and Common Area (including Limited Common Area) as follows:

> Except to the extent otherwise provided by the condominium instruments, all powers and responsibilities with regard to maintenance, repair, renovation, restoration, and replacement of the condominium shall belong (a) to the unit owners' association in the case of the common areas, and (b) to the individual unit owner in the case of any unit or any part thereof.

RSA § 356-B:41 (emphasis supplied).


II.  The Monadnock Condominium.

In the Monadnock Condominium, "units" are parcels of land, rather than physical structures. After purchasing a unit, the owner constructs its building(s) within the bounds of that unit. The unit owner is then responsible for maintenance and repair of everything located within the defined boundaries of its unit. Common Area (and designated Limited Common Area) is all land

that has been dedicated to the condominium that falls outside the metes and bounds descriptions of the units. Here, Target bought the land described as Unit 5 and then constructed its store on that land.

Consistent with the provisions of New Hampshire's Condominium Act, The Declaration of Monadnock Condominium provides that: "The Unit Owner's Association shall maintain, repair and replace the Common Area, <u>including Limited Common Area</u>, in a sightly, safe condition and good state of repair and shall, in the first instance, pay for such maintenance, repair, and replacement, subject to reimbursement by the Unit Owners described in Article 16." Condominium Declaration (document no. 13-2), Section 14.1 (emphasis supplied). <u>See also</u> RSA 356-B:45 (providing that the Unit Owners' Association may assess the cost to repair and maintain any Limited Common Area against the owner(s) of the unit(s) to which such Limited Common Area is assigned). The Declaration defines "Limited Common Area" to include, among other things, "any portion of a Building (including fixtures attached thereto) that <u>extends beyond the boundaries of a Unit</u> . . . including, without limitation, canopies, <u>loading docks</u>, and exterior equipment such as HVAC equipment and telecommunications equipment, and any sidewalks

adjacent to the Building." Id. at section 2.1(x) (emphasis

supplied).


If that were the extent of the relevant documents, the

court's inquiry would end there. "Loading docks" – at least

those that extend beyond the boundaries of an owner's unit – are

defined as Limited Common Area. So, even if (as plaintiffs

suggest) the phrase "loading dock" includes the ground-level

concrete parking pad adjacent to Target's unit, it would be

defined as Limited Common Area. And, under both the Condominium

Act and the Declaration, Limited Common Area must be maintained

by the Unit Owners' Association, not individual unit owners.[1]

---

[1]    Parenthetically, the court notes that plaintiffs seem to
believe that all "loading docks" in the condominium are
necessarily Limited Common Area. That is not the case. See
Declaration at section 2.1(x). Only those loading docks (or
portions thereof) that extend beyond the boundaries of a
particular unit are considered Limited Common Area. So,
although neither party makes this point, it is entirely possible
that what Target calls the "loading dock" – that is, the
elevated loading bay at the rear of its store – is actually part
of (or, more accurately, within the metes and bounds description
of) its unit. See generally Declaration at section 6.2 ("Unit
Boundaries"). But, that point is of little moment, since Target
acknowledges that it bears responsibility for maintaining and
repairing that elevated loading bay. The question presented is
whether Target also bears responsibility for maintaining and
repairing the adjacent ground-level concrete parking pad where
Mr. Hunt was injured.

But, prior to Mr. Hunt's injuries, the developer of the Monadnock Condominium (also known as the "Declarant") amended the Declaration several times, creating new types of Limited Common Area and imposing new responsibilities on unit owners with respect to those new types of Limited Common Area. Most of those amendments to the Declaration are not relevant to the parties' dispute. The Sixth Amendment to the Declaration, however, dated February 17, 2005, made several substantive changes, some of which are central to plaintiffs' assertion that Target, not the Unit Owners' Association, was responsible for the maintenance and repair of the concrete pad.

In February of 2005, the Declarant still owned nearly all the Units in Monadnock Condominium. At that point, only two units had been sold: one to Home Depot (Unit 1) and another to Berkshire-Keene, LLC (Unit 6). At that time, it would seem that Target was interested in purchasing Unit 5. Prior to that purchase, however, the Declarant made several significant amendments to the Declaration (some of which may have been at Target's urging). Among other things, the Sixth Amendment created what was called "Special Limited Common Area." That new form of Limited Common Area was defined as: "the portions of a Building (including fixtures attached thereto) <u>that extend beyond the boundaries of a Unit</u> as such boundaries are

8

determined in accordance with Section 6.2 of the Declaration
(including, without limitation, canopies, loading docks, and
exterior equipment such as HVAC equipment and telecommunications
equipment) and any sidewalks adjacent to the Building." Sixth
Amendment, Section 3.1(a) (emphasis supplied). It probably
bears repeating that "loading docks" may only be designated
"Special Limited Common Area" to the extent they extend beyond
the boundaries of an owner's unit. So, if a "loading dock" is
entirely within the unit, it cannot be Limited Common Area of
any sort.

The Sixth Amendment goes on to authorize (but not require)
each Unit Owner to alter, improve and/or modify designated
Special Limited Common Area. See Id. And, finally, the Sixth
Amendment provides that, "Notwithstanding anything in the
Declaration to the contrary, each Unit Owner shall maintain and
repair the Special Limited Common Areas appurtenant to its
Unit." Sixth Amendment, Section 8.1 (emphasis supplied).

As part of the Sixth Amendment to Declaration (and as
required by the Condominium Act), the condominium's site plans
were revised and recorded in the Cheshire County Registry of
Deeds. Although neither party has provided the court with
original-size copies of the Second Amended Site and Floor Plans,

those plans are available online and the court has reviewed

them.  See Cheshire County Registry of Deeds, Cabinet 12, Drawer

10, Plans 118, et seq.  One plan in particular - Plan 0121 -

depicts Target's Unit and the surrounding area.  As required by

the Condominium Act, see RSA 356-B:20, that plan depicts all

Limited Common Area appurtenant to Target's Unit.  Notable,

however, is the lack of any designated "Special Limited Common

Area," as defined in the Sixth Amendment, appurtenant to

Target's unit.


III. Plaintiffs' Arguments.

       Plaintiffs advance two theories under which they assert

that Target owed Mr. Hunt a legal duty to maintain the ground-

level concrete parking pad in a reasonably safe condition.

First, they say the Declaration (in particular, the Sixth

Amendment) itself imposes that obligation on Target.  Next, they

claim that New Hampshire's common law imposes a duty of care

upon Target because it had a "special relationship" with Mr.

Hunt as a "business invitee."


A.    Target's Obligation to Maintain the "Loading Dock"

       Under New Hampshire law, condominium declarations,

amendments, and related documents are contracts that govern the

legal rights between the declarant, unit owners, and the unit

owners' association.  Consequently, the interpretation of those

documents is a question of law for the court to resolve.  See,

e.g., Barclay Square Condo. Owners' Ass'n v. Grenier, 153 N.H.

514, 517 (2006).  And, as the New Hampshire Supreme Court has

often noted, "the parties' intent has long been the touchstone

of [the court's] interpretation of contracts."  Lynch v. Town of

Pelham, 167 N.H. 14, 22 (2014).  See also N.A.P.P. Realty Tr. v.

CC Enterprises, 147 N.H. 137, 141 (2001) (holding that if a

contract term is ambiguous, the court must "consider the

parties' intent by examining the contract as a whole, the

circumstances surrounding execution and the object intended by

the agreement, keeping in mind our goal of giving effect to the

intention of the parties.").


All parties to the Declaration, as amended, join in saying

the phrase "loading dock" is unambiguous and does not include

the ground-level concrete pad on which delivery trucks park.

That concrete area, they agree, is Limited Common Area that must

be properly maintained and repaired by the Unit Owner's

Association.


Plaintiffs disagree with that interpretation of the

Declaration and the narrow construction of the phrase "loading

dock."  That, in turn, gives rise to a somewhat unusual

situation in which plaintiffs - who are not parties to the
contract - wish to impose upon the contracting parties a
different, broader definition of one of the contract's terms.
That is, plaintiffs say the parties to the contract have it
wrong: the phrase "loading dock" encompasses <u>both</u> the elevated
loading bay <u>and</u> the adjacent ground-level concrete parking pad.
And, say plaintiffs, once it is understood that Target's
"loading dock" includes the adjacent, ground-level concrete pad,
it necessarily follows that the Declaration obligates Target to
maintain and repair that concrete parking pad as "Special
Limited Common Area."  If accepted, plaintiffs' interpretation
of the Declaration would substantially alter the way the parties
to the contract have interpreted it, as well as the way they
have historically allocated maintenance and repair obligations
(and, of course, liability and insurance obligations).

     In support of their argument, plaintiffs rely exclusively
upon the language contained in the Declaration and its various
amendments.  They say that although the Declaration defined
"loading docks" (again, to the extent they extend beyond the
boundaries of an owner's unit) as Limited Common Area,
Declaration at section 2.1(x), and imposed upon the Unit Owners'
Association the obligation to maintain and repair all Limited
Common Area, <u>id</u>. at section 14.1, the Sixth Amendment to the

Declaration substantially altered those maintenance responsibilities.  Specifically, plaintiffs point to the provisions creating "Special Limited Common Area," defining it to include "loading docks," and imposing the obligation to repair and maintain the same on the individual unit owners, rather than the Unit Owners' Association.

But, even if there were some evidence to support plaintiffs' claim that Target's "loading dock" is "Special Limited Common Area" (there is not), plaintiffs do not point to any evidence to support their claim that the phrase "loading dock" should be interpreted so broadly as to include within its scope the adjacent ground-level concrete pad.  Consequently, there is nothing in the record to support plaintiffs' claim that Target was responsible for maintaining that concrete pad (i.e., evidence suggesting either that: (a) the concrete pad is within the bounds of Target's unit; or (b) the site plans show that the concrete pad is "Special Limited Common Area" appurtenant to Target's unit).

Target, on the other hand, says the Declarant, the unit owners, and the Unit Owners' Association all agree that the ground-level concrete parking pad adjacent to Target's elevated loading bay is Limited Common Area for which the Owners'

Association bears maintenance and repair responsibilities.
Indeed, the Owners' Association undertook the substantial
financial responsibility to contract with a third party to
provide snow and ice removal services for that specific area,
along with all other Common Area in the condominium (services
estimated to cost $285,000 for the 2014/2015 snow-removal season
during which Mr. Hunt was injured).  See, e.g., Master Agreement
for Services (document no. 13-4) (agreement between Unit Owners'
Association and BDM Sweeper Services for snow and ice removal);
Affidavit of Fred McFadden (document no. 13-5) (statement by
property manager for Monadnock Condominium explaining that all
parties to the Declaration understand that the ground-level
concrete pad adjacent to Target's loading dock is Limited Common
Area, the Association is obligated to maintain and repair it,
and, accordingly, the Association contracts for those
maintenance and repair services); Affidavit of Matthew Robinson,
President of BDM Services (document no. 13-6) (acknowledging
that, during the winter that Mr. Hunt was injured, BDM
contracted with the Owners' Association to provide snow removal
and salting services on the concrete pad adjacent to Target's
loading dock).

Moreover, while the site plans recorded with the Sixth
Amendment do not label the location of Target's (then unbuilt)

loading dock and concrete parking pad, they do show the "loading

dock" and "concrete pad" for the adjacent unit, Unit 6 (owned by

Berkshire-Keene, LLC).  See Cheshire County Registry of Deeds,

Cabinet 12, Drawer 10, Plan 0121.  Those plans specifically

distinguish between Unit 6's "loading dock" and the adjacent

ground-level "concrete pad" on which delivery trucks park.  The

"concrete pad" (but not the "loading dock") is shown on the

plans as Limited Common Area appurtenant to Unit 6.  That

strongly supports Target's assertion that the declarant, the

Unit Owners, and the Unit Owners' Association, understood that,

under the governing legal documents, all "loading docks" in the

condominium are separate from, and treated differently than, the

adjacent, ground-level "concrete pads."  It also supports

Target's claim that the latter is "Limited Common Area," which

the Unit Owners' Association must maintain.  See Declaration,

Section 14.1 (The Unit Owners' Association shall maintain,

repair and replace the Common Area, including Limited Common

Area, in a sightly, safe condition and good state of repair.").

See also RSA § 356-B:41.[2]

---

[2]     In support of their argument, plaintiffs also allude to
language in the Fourth Amendment to Declaration creating what
was known as "Unit Owner-Maintained Limited Common Area" and
language seemingly imposing upon unit owners the obligation to
maintain "immediately adjacent Limited Common Area."  But, those
amendments to the Declaration were superseded by the Sixth
Amendment, which vested in Target, as the owner of Unit 5, the
right to elect whether it wished to "maintain the Limited Common

Even if the court were to accept plaintiffs' implicit suggestion that the Declaration's use of the phrase "loading dock" is ambiguous, it still could not adopt plaintiffs' broad interpretation of that phrase. The intent of all parties to the Declaration, as expressed in their actions, is clear: "loading dock," as used in both the Declaration and the site plans, refers to the elevated loading bay, from which merchandise is moved between delivery vehicles and a unit owner's store. It does not include within its scope the adjacent ground-level concrete pad on which delivery trucks park.

In light of the foregoing, it is plain that the property on which Mr. Hunt was injured is Limited Common Area of the Monadnock Condominium. Consequently, Target was not obligated – either by the Condominium Act or the Declaration of Monadnock Condominium – to remove accumulated snow and ice from that area.

---

Area appurtenant to Unit #5 at its own cost and expense," or defer those obligations to the Unit Owners' Association. <u>See</u> Sixth Amendment, Section 8.1(b). Target did not elect to do so and, as noted above, the Unit Owners' Association contracted with a third party to address snow removal from the Common Areas and Limited Common Areas, including the concrete parking pad at issue in this case. Moreover, the Fourth Amendment specifically provides that any such "Unit Owner-Maintained Limited Common Area" shall be "labeled as such on the Site Plans." Plaintiffs have pointed to no site plans showing the ground-level concrete pad on which Mr. Hunt was injured as "Unit Owner-Maintained Limited Common Area" appurtenant to Target's unit.

That obligation was borne by (and properly assumed by) the Unit
Owner's Association.


B.    <u>Target's "Special Relationship" with Mr. Hunt</u>.

Next, plaintiffs assert that even if Target does not own
the ground-level concrete pad on which Mr. Hunt was injured, it
was an "occupier" of that land (since it had the exclusive right
to use that Limited Common Area).  Consequently, say plaintiffs,
Target owed Mr. Hunt "a duty of reasonable care under all the
circumstances in the maintenance and operation of [that]
property."  Plaintiffs' Memorandum (document no. 15-1) at 7
(quoting <u>Grant v. Wakeda Campground, LLC</u>, 631 F. Supp. 2d 120,
124 (D.N.H. 2009)).  In a related argument, plaintiffs say
Target owed a duty of reasonable care to Mr. Hunt because he was
a "business invitee" with whom Target had a special
relationship.  <u>See</u> Plaintiffs' Memorandum at 8.  <u>See also</u> <u>Grant</u>,
631 F. Supp. 2d at 124 ("Defendant landowner has the duty to
keep the property safe for his invitees, but must only exercise
the care of a person of average prudence in maintaining the
premises.").


There are, however, a few problems with plaintiffs'
position.  First, one would have to assume that the New
Hampshire Condominium Act (which imposes maintenance and

insurance responsibilities for Common Area on the Unit Owners'
Association) does not supplant the common law principles upon
which plaintiffs rely.  Then, to hold Target liable for Mr.
Hunt's injuries, the trier-of-fact would have to have evidence
upon which to base the conclusion that (a) those injuries were
foreseeable, and (b) Target did not act in a manner reasonably
calculated to prevent them.  See generally Simpson v. Wal-Mart
Stores, Inc., 144 N.H. 571, 573 (1999) (plaintiffs produced
sufficient evidence for jury to conclude that it had snowed
earlier in the day on which plaintiff slipped and fell;
defendant was aware of icy conditions in the area where
plaintiff fell; defendant knew those conditions created a hazard
to customers; yet, defendant took no action to address those
conditions).

     Here, the record is devoid of any evidence even suggesting
that Target could have (or should have) foreseen Mr. Hunt's
injuries (e.g., some evidence of when it last snowed prior to
Mr. Hunt's injury; some evidence that Target was (or should have
been) aware that ice and snow tended to accumulate on the
concrete parking pad; some evidence that Target knew or
suspected that BDM Services was doing a poor job of maintaining
that area on behalf of the Unit Owners' Association, etc.).  Nor
is there evidence that Target failed to act reasonably under the

circumstances by relying upon the Unit Owners' Association and
its contractor, BDM Services, to remove snow and ice from the
area.

In order to defeat Target's motion for summary judgment,
plaintiffs must present some evidence to support their theories
of liability and demonstrate that there are genuinely disputed
material facts warranting a trial.  They have not done so.

## Conclusion

Target, the Declarant of the Monadnock Condominium, and the
other unit owners at Monadnock Condominium all interpret the
provisions of the Declaration to define the phrase "loading
dock" to mean the elevated platform or loading bay, up to which
delivery trucks would back, and from which merchandise would be
moved between those trucks and the unit owners' stores.  Those
parties to the contract plainly do _not_ interpret (and have never
interpreted) the phrase "loading dock" to include within its
scope the adjacent ground-level concrete pad on which delivery
trucks would park.  <u>See, e.g.</u>, Second Amended Site and Floor
Plans, Cheshire County Registry of Deeds, Cabinet 12, Drawer 10,
Plan 0121.  Under that construction of the Declaration, the land
on which Mr. Hunt was injured is "Limited Common Area" - it is
not part of Target's unit, nor does the Declaration (or the

Condominium Act) obligate Target to maintain it.  Rather, the
Unit Owners' Association was solely responsible for maintaining
and repairing that property.  The arguments advanced by
plaintiffs - who are not parties to that contractual agreement -
seeking to: (a) expand the definition of the phrase "loading
dock" to include the ground-level concrete pad on which Mr. Hunt
was injured, and (b) define that expanded area as "Special
Limited Common Area" (for which Target would be responsible),
are not supported by evidence in the record, the Declaration, or
the New Hampshire Condominium Act.

        Equally unavailing are plaintiffs' efforts to demonstrate
some basis in the record upon which a jury could plausibly rest
the conclusion that Target owed, and breached, a duty of care to
Mr. Hunt by unreasonably failing to mitigate the risk of
foreseeable injuries of the sort Mr. Hunt sustained.  Plaintiffs
have pointed to no evidence suggesting how long the ice had been
present before Mr. Hunt fell, or that Target was aware that snow
and/or ice tended to accumulate on the concrete pad, or that
Target acted unreasonably in relying upon the Unit Owners'
Association (and its agent, BDM Services) to remove snow and
spread salt in that area.  Absent some evidence on one or more
of those points, plaintiffs cannot withstand summary judgment.
See generally Irobe v. United States Dept. of Agric., 890 F.3d

371, 377 (1st Cir. 2018) ("[S]ummary judgment is warranted if a nonmovant who bears the burden on a dispositive issue fails to identify 'significantly probative' evidence favoring his position.") (citation omitted); <u>Mesnick v. Gen. Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991) ("Genuine issues of material fact are not the stuff of an opposing party's dreams.  On issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion.").

For the foregoing reasons, as well as those set forth in Target's legal memorandum, Target's motion for summary judgment (document no. 13) is granted.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

July 1, 2019

cc:  Ronald E. Cook, Esq.
     Meaghan A. Jepsen, Esq.
     Sean J. Milano, Esq.
     Meredith M. Lasna, Esq.